# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TONEY LEE WILSON, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:14CR482-1 |
| | ) | 1:19CV909 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Section 2255 Motion") (Docket Entry 29).[1] For the reasons that follow, the Court should deny the Section 2255 Motion.

### INTRODUCTION

This Court (per then-Chief United States District Judge William L. Osteen, Jr.) entered a Judgment against Petitioner imposing, inter alia, a prison term of 180 months upon his guilty plea to the charge of possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1), after which then-Chief Judge Osteen found that Petitioner's record subjected him to enhanced penalties under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). (Docket Entry 19; see also Docket Entry 1 (Indictment); Docket

---

[1] Parenthetical citations refer to Petitioner's above-referenced criminal case.

Entry 11 (Factual Basis); Docket Entry 12 (Plea Agreement); Docket Entry 24 (Sent'g Hrg. Tr.); Docket Entry 33 (Plea Hrg. Tr.).) Petitioner gave notice of appeal (Docket Entry 20) and,

> [o]n appeal, [he] argue[d] that his prior North Carolina convictions for breaking and entering do not qualify as predicate felonies under ACCA. Pursuant to th[e ] opinion in United States v. Barlow, 811 F.3d 133 (4th Cir. 2015), cert. denied, [578] U.S. [988] (2016), [the United States Court of Appeals for the Fourth Circuit] conclude[d] that [Petitioner's] breaking and entering convictions under North Carlina law constitute predicate felonies under ACCA. [The Fourth Circuit] therefore affirm[ed his] sentence.

United States v. Wilson, 658 F. App'x 183, 183 (4th Cir. 2016) (parallel citation omitted); see also id. at 184 ("North Carolina law now exposes all felons to terms of imprisonment exceeding one year for even the least serious felony . . . ."). Subsequently, Petitioner filed the Section 2255 Motion (Docket Entry 29; see also Docket Entry 30 (Memorandum in Support)), the United States responded (Docket Entry 34), and Petitioner replied (Docket Entry 35).[2]

---

[2] Petitioner did not verify his Memorandum in Support or his reply (see Docket Entry 30 at 9; Docket Entry 35 at 5), and thus any factual assertions therein lack evidentiary value, see, e.g., United States v. Rhodes, No. 3:08CR82, 2013 WL 150335, at *3 (E.D. Va. Jan. 14, 2013) (unpublished) ("[U]nsworn allegations cannot constitute a basis for habeas relief. . . . Facts alluded to in an unsworn memorandum will not suffice." (internal quotation marks omitted)), aff'd in part and appeal dismissed in part, 531 F. App'x 279 (4th Cir. 2013); Wright v. United States, Nos. 3:04CR3, 3:10CV174, 2011 WL 4852470, at *17 n.7 (S.D. Ohio May 20, 2011) (unpublished) ("[T]he unsworn allegations of [a] reply are not an acceptable form of evidence . . . ."), recommendation adopted, 2011 WL 4852495 (S.D. Ohio Oct. 13, 2011) (unpublished).

**DISCUSSION**

The Section 2255 Motion labels its lone ground for relief: "[Petitioner's] guilty plea violates Due Process." (Docket Entry 29, ¶ 12(Ground One).) For that claim's "[s]upporting facts" (id., ¶ 12(Ground One)(a)), the Section 2255 Motion states: "[Petitioner] was misadvised as to the essential elements of the § 922(g) offense [and] therefore his plea is not constitutionally valid." (Id. (citing Docket Entry 30); see also Docket Entry 30 at 1 ("[Petitioner's] conviction was obtained in violation of the Fifth Amendment's prohibition against involuntary guilty pleas. This claim is solidified by Rehaif v. United States, 588 U.S. ___ [, 139 S. Ct. 2191] (2019) . . . ." (bold font omitted) (underscoring and period added)), 2 ("[Petitioner] was denied Due Process where he pled guilty to [Section] 922(g) based upon a misunderstanding of the essential elements of the statutory offense. . . . Due Process was violated by the plea to the [Section] 922(g) charge because there was an insufficient factual basis to support the charge.").)

In Rehaif, the United States Supreme Court ruled that, in prosecutions under Section 922(g), the United States "must prove not only that the defendant knew he possessed a firearm, but also that he knew he was a felon when he possessed the firearm." Greer v. United States, ___ U.S. ___, ___, 141 S. Ct. 2090, 2095 (2021) (emphasis omitted) (citing Rehaif, 588 U.S. at ___, 139 S. Ct. at 2199-2200). Petitioner's (pre-Rehaif) Indictment and plea colloquy

did not identify such knowledge as an element of the instant offense. (See Docket Entry 1 at 1; Docket Entry 33 at 29.) Nonetheless, where – as here, as the United States has pointed out (see Docket Entry 34 at 8) – a defendant fails to contest the validity of his or her guilty plea on direct appeal, the doctrine of procedural default will bar a collateral attack on that plea. See Bousley v. United States, 523 U.S. 614, 621 (1998) (holding that "voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review"); see also United States v. Timmreck, 441 U.S. 780, 784 (1979) (observing that "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas" (internal footnote omitted)).

"A procedural default . . . may be excused in two circumstances: where a person attacking his conviction can establish (1) that he is 'actually innocent' or (2) 'cause' for the default and 'prejudice' resulting therefrom." United States v. Fugit, 703 F.3d 248, 253 (4th Cir. 2012) (quoting Bousley, 523 U.S. at 622). As the United States again has argued (see Docket Entry 34 at 6 & n.3, 8-13), Petitioner cannot show such circumstances.

To begin, Petitioner may not rely, as cause for his default, on the alleged futility, at the time of his direct appeal, of the argument only later adopted in Rehaif. "[W]here a constitutional claim is so novel that its legal basis is not reasonably available

4

to counsel, a defendant has cause for his failure to raise the claim," Reed v. Ross, 468 U.S. 1, 16 (1984) (emphasis added); however, "[w]here the basis of a constitutional claim is available, and other defense counsel have perceived and litigated that claim, the demands of . . . finality counsel against labeling alleged unawareness of the objection as cause for a procedural default," Engle v. Isaac, 456 U.S. 107, 134 (1982) (internal footnote omitted). In Bousley, the Supreme Court further explained the meaning of the phrase "reasonably available" and the concept of "futility" in the procedural default context:

> [The petitioner] argues that the legal basis for his claim was not reasonably available to counsel at the time his plea was entered. This argument is without merit. While we have held that a claim that "is so novel that its legal basis is not reasonably available to counsel" may constitute cause for a procedural default, Reed[], 468 U.S. [at] 16[], [the] petitioner's claim does not qualify as such. The argument that it was error for the [d]istrict [c]ourt to misinform [the] petitioner as to the statutory elements of [the offense to which he pleaded guilty] was most surely not a novel one. Indeed, at the time of [his] plea, the Federal Reporters were replete with cases involving challenges [of that sort]. [The p]etitioner also contends that his default should be excused because . . . any attempt to attack [his] guilty plea would have been futile. This argument, too, is unavailing. As we clearly stated in Engle[], "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." [Engle, 456 U.S.] at 130[] n.35[]. Therefore, [the] petitioner is unable to establish cause for his default.

Bousley, 523 U.S. at 622–23 (certain quotation marks, some internal citations, and footnote omitted).

5

Courts around the nation (including in the Fourth Circuit) have applied Bousley to conclude that a petitioner's Rehaif-based "knowledge of status" argument does not qualify as "novel" and thus does not establish "cause" excusing default, as exemplified here:

> [The petitioner]'s claim is virtually identical to Bousley, in that numerous courts have opined on the "knowledge of status" argument [the petitioner] asserts here prior to Rehaif. In fact, "knowledge of status" arguments have been a consistent feature of statutory interpretation cases since at least the 1950's. In other words, [the petitioner]'s claim is hardly novel, either generally or in its particular application to the statute under which he was convicted. Thus, [the petitioner]'s claim does not overcome procedural default based upon cause and prejudice, because he cannot show that his knowledge of status argument is sufficiently novel.

Gray v. United States, No. 3:19C607, 2020 WL 127646, at *3 (M.D. Tenn. Jan. 10, 2020) (unpublished) (internal citations omitted); accord, e.g., Chiles v. United States, Nos. 1:18CR7, 1:20CV80, 2021 WL 6010347, at *4-5 (N.D.W. Va. Dec. 20, 2021) (unpublished), appeal filed, No. 22-6113 (4th Cir. Feb. 2, 2022); Slocum v. United States, Nos. 2:13CR274, 2:17CV3759, 2021 WL 3706682, at *9 (S.D.W. Va. Aug. 20, 2021) (unpublished), appeal filed, No. 21-7283 (4th Cir. Sept. 7, 2021); United States v. Asmer, Crim. No. 3:16-423, 2020 WL 6827829, at *5-7 (D.S.C. Nov. 20, 2020) (unpublished), appeal dismissed, No. 21-6064 (4th Cir. Sept. 29, 2021) (slip op.); McCauley v. United States, No. 1:13CR423, 1:17CV666, 2020 WL 5881270, at *6-7 (M.D.N.C. Sept. 4, 2020) (unpublished), recommendation adopted, 2020 WL 5821074 (M.D.N.C. Sept. 30, 2020) (unpublished) (Schroeder, C.J.); Wilson v. United States, Nos.

6

3:14CR254, 3:19CV280, 2020 WL 4950930, at *8 (W.D.N.C. Aug. 24, 2020) (unpublished), appeal dismissed, 2020 WL 9148121 (4th Cir. Nov. 30, 2020) (unpublished); see also Cruickshank v. United States, 505 F. Supp. 3d 1127, 1133 (W.D. Wash. 2020) (citing Gray and United States v. Vasquez-Ahumada, No. 5:18CR5, 2020 WL 3213397, at *2 (W.D. Va. June 15, 2020) (unpublished), as well as rulings from courts in five other Circuits, in holding "that *Rehaif* did not create a . . . novel rule that would support a finding of cause"), appeal dismissed, 2021 WL 5851076 (9th Cir. July 2, 2021) (unpublished); but see, e.g., United States v. Dempster, Crim. No. 14-24, Civ. No. 20-1424, 2022 WL 486791, at *3 (D. Md. Feb. 17, 2022) (unpublished) (finding cause for default of Rehaif claim, but denying relief for want of proof of actual prejudice); Merritt v. United States, 499 F. Supp. 3d 249, 257-62 (E.D. Va. 2020) (same).[3]

---

[3] Conversely, any failure by Petitioner's counsel to anticipate the Supreme Court's ruling in Rehaif abrogating the Fourth Circuit's (longstanding) contrary holding in United States v. Langley, 62 F.3d 602, 604-08 (4th Cir. 1995), "does not constitute deficient performance under *Strickland*," United States v. Hilliard, No. 3:17CR44, 2021 WL 2369400, at *7 n.13 (E.D. Va. June 9, 2021) (unpublished), appeal dismissed, 2021 WL 6116852 (4th Cir. Dec. 27, 2021) (unpublished), and thus "cannot serve as the cause [excusing] the default of [Petitioner's] *Rehaif* claim," id.; accord, e.g., Coble v. United States, Nos. 1:18CR203, 1:19CV1146, 2021 WL 5810454, at *7 (M.D.N.C. Dec. 7, 2021) (unpublished) (Eagles, J.); Morgan v. United States, Nos. 1:14CR194 & 414, 1:20CV965, 2021 WL 6427676, at *4 (M.D.N.C. Nov. 10, 2021) (unpublished) (Webster, M.J.), recommendation adopted, 2022 WL 112189 (M.D.N.C. Jan. 12, 2022) (unpublished) (Schroeder, C.J.); United States v. Solomon, No. 3:16CR342, 2021 WL 1124723, at *5-6 (D.S.C. Mar. 24, 2021) (unpublished).

Nor could Petitioner carry his burden of showing actual prejudice[4] or actual innocence to bypass the procedural bar, as the record contains overwhelming proof that he knew his felon status when he possessed a firearm. As an initial matter, the Factual Basis supporting Petitioner's guilty plea documented that, "[a]t the time of the instant offense, [Petitioner had incurred] . . . prior convictions on August 8, 2014, in the Superior Court of Durham County for several counts of felony Breaking and Entering, which were subject to terms in prison exceeding one year." (Docket Entry 11 at 2.) The Factual Basis also detailed evidence showing that Petitioner <u>not only</u> knowingly possessed a firearm as charged in the Indictment (i.e., officers found it on his person), <u>but also</u> knew of his status as a felon, as well as the unlawfulness of firearm possession in light of such status (i.e., Petitioner fled when he saw police officers). (<u>See</u> <u>id.</u> at 1-2 ("On November 18, 2014, officers . . . responded to a 911 call reporting a disturbance with a weapon . . . . Two [male] individuals fled on foot at the sight of the police. . . . [Petitioner] was [one of the] individual[s] who fled at the sight of police. Officers

---

[4] For reasons articulated above, Petitioner cannot meet the "cause" prong of the "cause and actual prejudice" exception. "Accordingly, the [C]ourt need not proceed to analyze the [actual] prejudice prong . . . . However, for the sake of thoroughness, th[is Recommendation] will proceed to consider whether, assuming arguendo [he] demonstrated cause, he can demonstrate . . . actual prejudice." <u>Asmer</u>, 2020 WL 6827829, at *7 (emphasis omitted).

8

apprehended him after a short chase. At the time of his capture, [he] had a .22 caliber revolver tucked into his waistband.").)[5]

In addition, the Presentence Report ("PSR") contains further details which support an inference that Petitioner ran because of his felon status (which he knew made firearm possession unlawful):

1) when the officer "captured [Petitioner] after a short chase" (Docket Entry 18, ¶ 5) and "located [the firearm] in [his] front right waistband" (id.), "[t]he officer did not locate any other illegal items" (id.); and

2) when (on two separate occasions) "[t]he officer asked [Petitioner] for his name and date of birth" (id.), Petitioner (twice) gave a false name and date of birth (see id.), only giving a truthful response after the officer "asked a third time for [Petitioner's] true identification" (id.).[6]

---

[5] At his plea hearing, Petitioner swore that he "reviewed the [F]actual [B]asis" (Docket Entry 33 at 31) and that he "generally agree[d] with th[ose] facts" (id.; see also id. (memorializing disavowal of objections to Factual Basis by Petitioner's counsel)).

[6] During his sentencing hearing, Petitioner conceded the accuracy of the PSR's above account of his flight and lies about his identity. (See Docket Entry 24 at 5.) Such obstructive conduct strongly indicates that Petitioner knew both that (A) his record made him a felon and (B) his felon status made his firearm possession unlawful (a step beyond what Rehaif requires, see, e.g., United States v. Legrand, No. 1:19CR590, 2020 WL 1472265, at *3 (M.D.N.C. Mar. 26, 2020) (unpublished) (Schroeder, C.J.) ("The Rehaif court did not hold that in prosecuting violations of 18 U.S.C. § 922(g) the Government must prove that a defendant knew he was not allowed to possess a firearm.")). See United States v. Johnson, 805 F. App'x 740, 743 (11th Cir.) (holding that "jury could infer from [the defendant's] flight . . . and evasiveness
(continued...)

9

Moreover, as the basis for an "Adjustment for Acceptance of Responsibility" pursuant to U.S.S.G. § 3E1.1, the PSR documents that "[Petitioner] was interviewed on March 13, 2015, by [a] probation officer and provided a written statement wherein [Petitioner] admitted involvement in the [instant] offense." (Id., ¶ 8 (emphasis omitted).) Of particular salience now:

> [Petitioner then] stated: ". . . On or about November 18, 2014, I knowingly possessed a firearm, as alleged in the [I]ndictment. . . . <u>I also agree and admit that I had previously been convicted of Felony Breaking and Entering, and that this conviction has never been</u>

---

⁶(...continued)
during his interview that he knew he was a felon barred from possessing firearms"), cert. denied, ___ U.S. ___, 141 S. Ct. 148 (2020); United States v. Kelly, Crim. No. 15-148, 2021 WL 5831333, at *8 (M.D. La. Dec. 8, 2021) (unpublished) (rejecting Rehaif claim where the defendant, among other things, "fled immediately upon encountering police," thereby exhibiting "guilty knowledge," i.e., "[y]ou run because you got the gun and you know you're a felon" (internal quotation marks omitted)); United States v. Waller, Crim. No. 14-40, 2021 WL 1060291, at *4 (W.D. Pa. Mar. 19, 2021) (unpublished) ("[T]he record is replete with testimony of [the d]efendant's furtive conduct, which demonstrates his consciousness of guilt and serves as circumstantial evidence of his knowledge of felon status."); see also United States v. Arthurs, 823 F. App'x 692, 697 (10th Cir. 2020) ("If before his arrest [the defendant] knew [he could not possess a firearm], then it is inconceivable that [he] did not know that he was a felon at the time of his arrest."); Perrin v. United States, Nos. 1:11CR318, 1:21CV26, 2021 WL 6206349, at *4 n.3 (M.D.N.C. Oct. 29, 2021) (unpublished) (Webster, M.J.) ("If [the p]etitioner had no knowledge of his prohibited status, he would have no reason to attempt to tamper with witness testimony as to his possession [of a firearm]."), recommendation adopted, 2022 WL 19644 (M.D.N.C. Jan. 3, 2022) (unpublished) (Schroeder, C.J.); United States v. Hoover, Crim. No. 17-525, 2020 WL 859331, at *5 (D.N.J. Feb. 21, 2020) (unpublished) (citing evidence of the defendant's "concealment" of firearm in concluding he could not show jury would have failed to find he knew of felon status if properly instructed under Rehaif), aff'd, 857 F. App'x 721 (3d Cir. 2021).

> expunged or set aside, that I have not been pardoned, and that my right to possess a firearm or ammunition has never been restored. I accept full responsibility for my actions. I am sorry for my actions, and prepared to accept consequences of my actions."

(Id. (emphasis added); see also id., ¶¶ 3 ("[Petitioner] was convicted . . . of four counts of Felony Breaking and Entering on August 7, 2014." (parenthetical omitted)), 16 (listing same four "Felony Breaking and Entering" offenses as "prior convictions for a violent felony," which (along with his juvenile adjudications for "Felony Robbery with a Dangerous Weapon" and "Felony Assault with a Deadly Weapon with Intent to Kill Inflicting Serious Bodily Injury and Felony Robbery with a Dangerous Weapon") "subject[ed] Petitioner] to an enhanced sentence under [ACCA]"), 27 (documenting same four "Felony Breaking and Entering" convictions, which resulted in two consecutive, suspended sentences of "6 to 17 months imprisonment").) In other words, Petitioner admitted that, prior to possessing a firearm, he had sustained a felony conviction which barred him from possessing a firearm, as well as that his possession of a firearm after such conviction warranted both an expression of remorse and the imposition of punishment.

Consistent with that acknowledgment of moral and criminal culpability, as sentencing approached, Petitioner did not seek to set aside his guilty plea on the ground that his prior breaking and entering convictions failed to qualify as felonies which made his firearm possession unlawful under Section 922(g), but (nonetheless)

11

did "object[] to th[e ACCA] enhancement on the ground that his breaking and entering convictions (PSR ¶27) do not qualify as felonies for the purposes of the [ACCA] enhancement, because the maximum term of imprisonment for those convictions is eight months." (Docket Entry 17 at 2; see also id. at 2-7 (elaborating on theory that sentence of "6 to 17 months imprisonment" did not meet definition of violent felony under ACCA).) However, at sentencing, Petitioner's counsel extended the "objecti[on] to paragraph 16 and paragraph 27 [of the PSR] . . . on the basis that [Petitioner] wasn't subject to a term of imprisonment of more than a year for his breaking and entering conviction" (Docket Entry 24 at 4), by "add[ing], for the record, that[,] if [then-Chief Judge Osteen] grant[ed that] objection or rule[d] in [Petitioner's] favor, [ Petitioner] would be making a motion to withdraw [his] guilty plea because he would not have any predicate felonies [for purposes of Section 922(g)]" (id. at 5). After hearing extensive argument on Petitioner's foregoing objection (and another defendant's parallel objection) (see id. at 5-32), then-Chief Judge Osteen, "conclude[d] that the objection should be overruled in [Petitioner's] case and that the [PSR would be] adopted with the [guideline] calculation as contained therein" (id. at 32-33; see also id. at 36 ("I will, in [Petitioner's] case, adopt the [PSR] without change. . . . [T]he [ACCA] penalties are applicable, and therefore there is a mandatory minimum sentence of 15 years.")).

12

Before then-Chief Judge Osteen imposed sentence, Petitioner gave an allocution in which he candidly stated: "I want to apologize to all y'all people here. And I just want to say that I do accept everything that is coming to me. . . . [T]here is nothing really more to say, you know? I mean, I deserve what happened. What ever happened, happened, you know? That's it." (Id. at 38.) Put another way, consistent with all the (above-discussed) evidence showing that he knew his felon status at the time of the instant offense, Petitioner neither asserted, as mitigation (or justification) for his possession of a firearm, any excuse that (at the time of such possession) he honestly believed he lawfully could possess a firearm nor voiced any (former) misunderstanding about his status as a felon.

Given the foregoing (still undisputed[7]) evidence, "any [Rehaif] error during [Petitioner's] Rule 11 colloquy could not have affected [his] substantial rights, [and therefore he] cannot show actual prejudice excusing his procedural default," United States v. Bowman, 267 F. App'x 296, 300 (4th Cir. 2008); see also Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) ("To show actual prejudice, [a petitioner] must demonstrate that the error worked to his 'actual and substantial disadvantage,' not merely

---

[7] In fact, Petitioner has not even alleged (let alone offered competent proof to show) that, at the time of the instant offense, he did not know his status as a felon. (See Docket Entry 29, ¶ 12; Docket Entry 30 at 1-9; Docket Entry 35 at 1-5.)

13

that the error created a 'possibility of prejudice.'" (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986))). These words (adapted) from a neighboring court's disposition of a similar Rehaif claim illuminate the path to that conclusion:

> As the Supreme Court recently observed in *Greer* in the materially analogous situation of determining whether a defendant asserting *Rehaif* error could satisfy the substantial-rights prong of the plain-error test:
>
>> In a felon-in-possession case where the defendant was in fact a felon when he possessed firearms, the defendant faces an uphill climb in trying to satisfy the substantial-rights prong of the plain-error test based on an argument that he did not know he was a felon. The reason is simple: If a person is a felon, he ordinarily knows he is a felon. Felony status is simply not the kind of thing that one forgets. The simple truth is not lost upon juries. Thus, absent a reason to conclude otherwise, a jury will usually find that a defendant knew he was a felon based on the fact that he was a felon. A defendant considering whether to plead guilty would recognize as much and would likely factor that reality into the decision to plead guilty. In short, if a defendant was in fact a felon, it will be difficult for him to carry the burden on plain-error review of showing a reasonable probability that, but for the *Rehaif* error, the outcome of the district court proceedings would have been different.
>
> *Greer*, [ ___ U.S. at ___,] 141 S. Ct. at 2097.
>
> All of this has played out in [Petitioner's] case, evincing his uphill climb to establish he has suffered actual prejudice as the result of the *Rehaif* error in his case. [Petitioner] admitted in the [F]actual [B]asis for his guilty plea [and a statement to the Probation Office] that, as of [the date of the instant offense], he had been convicted of [a] crime[] punishable by a term of imprisonment exceeding one year for which he had never been pardoned. . . .

14

> Although the [C]ourt could correctly end its actual
> prejudice analysis [t]here, the [C]ourt [also may take]
> note[ of] the undisputed evidence in the habeas record
> powerfully illustrat[ing] the lack of actual prejudice
> flowing from the *Rehaif* error in [Petitioner's] case, for
> it ably demonstrates:  (1) the Government could have
> presented a strong case at trial against [Petitioner] on
> the missing *Rehaif* element for which he had no viable
> defense; and (2) pleading guilty offered [Petitioner] a
> better outcome than he most assuredly would have achieved
> had he gone to trial.  The Government's obligation to
> prove a defendant's knowledge of his felony status is not
> burdensome, as "knowledge can be inferred from
> circumstantial evidence." *Rehaif*, [588 U.S. at ___,] 139
> S. Ct. at 2198.  The Government most assuredly would have
> put before the jury undisputed evidence regarding
> [Petitioner's multiple prior felony] convictions . . . .
> Had the Government put this evidence before a jury on the
> missing *Rehaif* element, for which [Petitioner] had no
> viable defense, the jury in all reasonable likelihood
> would have found, on [the date he possessed a firearm],
> [he] knew he had been previously convicted of at least
> one crime punishable by a term of imprisonment exceeding
> one year.  *See Greer*, [___ U.S. at ___,] 141 S. Ct. at
> 2097–98 (defendants' prior multipl[e] felony convictions
> constituted "substantial evidence that they knew they
> were felons" at time they possessed firearms as alleged
> in federal indictments for felon-in-possession offenses).
> Moreover, not to be overlooked in the actual prejudice
> analysis is the fact, if convicted [of the instant
> offense] following a jury trial, [Petitioner] would have
> lost his three-level decrease in his total offense level
> for acceptance of responsibility by pleading guilty, thus
> increasing his sentencing range under the Guidelines from
> [180] to [188]-months imprisonment to [210] to [262]-
> months imprisonment.  USSG Ch 5. Pt. A (Sentencing Table)
> [(2014) (cell for Offense Level 30 and Criminal History
> Category V versus cell for Offense Level 33 and Criminal
> History Category V)[8]].  Given the [C]ourt sentenced
> [Petitioner at the bottom] of his Guidelines range, if

---

[8] "The 2014 Guidelines Manual . . . was used to determine [Petitioner's] offense level."  (Docket Entry 18, ¶ 9.)  Because he qualified as "an armed career criminal" (id., ¶ 16), his "offense level [wa]s 33" (id.), prior to the three-level reduction for acceptance of responsibility (see id., ¶¶ 17-19), and his record put him in Criminal History Category V (see id., ¶¶ 29-32).

15

> convicted on [the instant offense] at trial, [he] likely would have received a sentence in the neighborhood of [30] months longer than he received by pleading guilty to [the instant offense]. Two[-and-a-half] years spent in incarceration is a substantial bite out of anyone's life, and the [C]ourt [should conclude], in the absence of *Rehaif* error, [Petitioner] would have chosen to lop that time off his sentence by pleading guilty in the face of how easily the Government could have proven the missing *Rehaif* element.
>
> To summarize, when the overwhelming strength of the case the Government could have presented at trial on the missing *Rehaif* element is considered with the benefit of the bargain [Petitioner] would have lost had he not pleaded guilty, the likelihood [he] would have chosen to roll the dice at trial . . . had he known about the missing *Rehaif* element prior to his guilty plea is nil.

United States v. Sumter, No. 3:02CR499, 2021 WL 3173176, at *10-11 (D.S.C. July 27, 2021) (unpublished) (emphasis, some internal citations, some parentheticals, and some quotation marks omitted); see also Jacobs v. United States, Nos. 1:17CR97, 1:20CV440, 2021 WL 5989077, at *3-4 (M.D.N.C. Dec. 17, 2021) (unpublished) (Eagles, J.) ("The presentence report confirms that [the petitioner] received probation and did not serve an active period of imprisonment. But he points to no evidence . . . he did not know he had been convicted of a crime punishable by longer than a year in prison, and there is substantial evidence undermining [any such] assertion and showing that he did have such knowledge. First, [the petitioner] was convicted [before the instant offense] of not one felony but four felonies . . . . Second, . . . the sentences actually imposed [for those felonies] were [both] over a year, even if they were suspended. . . . [H]ad [the petitioner] gone to trial

16

and been convicted, he would have lost the substantial benefit he received under the guidelines and the plea agreement for acceptance of responsibility. [The petitioner] has not shown a reasonable probability that, but for the [Rehaif] error, he would not have entered the guilty plea." (internal citations omitted)); Coble v. United States, Nos. 1:18CR203, 1:19CV1146, 2021 WL 5810454, at *6 (M.D.N.C. Dec. 7, 2021) (unpublished) (Eagles, J.) (dismissing the petitioner's sworn, conclusory assertion "that he did not know he had been convicted of a felony [a]s extremely weak," notwithstanding fact "that he received probation and it appear[ed] he had never had a probationary sentence revoked," in light of evidence that he conceded felon status in previous statement and that state court documents described prior offense as felony); Poole v. United States, Nos. 1:97CR221, 1:20CV321, 2021 WL 7367041, at *2 (M.D.N.C. Nov. 19, 2021) (unpublished) (Peake, M.J.) ("[The p]etitioner had previously been convicted of possession with intent to sell and deliver marijuana, been sentenced to two years of imprisonment (suspended), and was still on probation for that conviction at the time he possessed the firearm. . . . Clearly, [he] would have known of this conviction at the time he possessed the firearm and the Government would have had absolutely no difficulty alleging or proving this fact. [The p]etitioner does not point to any evidence he could have presented to show that he did not know he was a felon. Therefore, he cannot show any

17

probability, much less a reasonable probability, of a different result in his case had the knowledge element discussed in Rehaif been charged and instructed upon in his case."), recommendation adopted, 2022 WL 686271 (M.D.N.C. Mar. 8, 2022) (unpublished) (Tilley, S.J.); United States v. Crawley, No. 4:15CR1, 2021 WL 2910724, at *2-3 (W.D. Va. July 12, 2021) (unpublished) ("Although *Greer* articulated the threshold to show prejudice for [a] *Rehaif* error in a direct appeal under the plain-error standard, the framework is nonetheless instructive in the habeas context where [a petitioner] alleges the same error. In fact, the *actual prejudice* standard for collateral attacks is a 'significantly higher hurdle than would exist on direct appeal.' . . . [P]revious felony convictions are substantially probative to prove this element because a jury will usually find that a defendant *knew* he was a felon based on the fact that he *was* a felon. Without evidence that [the petitioner] was unaware of his status, he has failed to demonstrate the [ability to meet] the actual prejudice standard. Nor has [he] shown that he would have elected to go to trial if he was informed the government would have to prove that he knew his status. Indeed, [he] would likely still have pleaded guilty given the substantial evidence to prove that element. Moreover, [he] has provided no reason why he would not have still accepted a guilty plea which was favorable to him." (italics in original) (some

18

internal citations and quotation marks omitted) (quoting <u>United States v. Frady</u>, 456 U.S. 152, 166 (1982))).

Lastly, "[t]o establish actual innocence, [P]etitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." <u>Bousley</u>, 523 U.S. at 623 (internal quotation marks omitted); <u>see also id.</u> ("'[A]ctual innocence' means factual innocence, not mere legal insufficiency."); <u>United States v. MacDonald</u>, 911 F.3d 723, 798 (4th Cir. 2018) ("[The petitioner] face[s] a daunting burden in establishing his eligibility for relief because of his actual innocence . . . ." (internal quotation marks omitted)). "[A]s previously explained, the record forecloses any plausible argument [Petitioner] did not know he was a felon at the time he possessed the firearm as alleged in [the Indictment]. For these reasons, [he cannot] carry his burden of demonstrating he is actually innocent . . . and therefore[] his procedural default remains unexcused." <u>Sumter</u>, 2021 WL 3173176, at *11 (internal citation omitted).

To conclude:

> [B]ased on the holding in <u>Greer</u> and the fact that it is clear that [Petitioner] understood that he had been convicted of a crime punishable by imprisonment for a term exceeding one year, the [C]ourt [should] find[] that [Petitioner] could not make a showing that he would not have pled guilty to being a felon in possession [of a firearm] if he had known that the government had to prove that he was aware of his status. Nor, based on the same facts, could he show that he is actually innocent of the offense of being a felon in possession of a firearm. For these reasons, the [C]ourt [should] find[] that

19

> [Petitioner can]not overcome the procedural default in his case and is not entitled to relief under Rehaif.

United States v. Pennington, No. 5:14CR30, 2021 WL 3375722, at *5 (W.D. Va. Aug. 3, 2021) (unpublished).[9]

## CONCLUSION

Petitioner has not shown entitlement to collateral relief.

**IT IS THEREFORE RECOMMENDED** that the Section 2255 Motion (Docket Entry 29) be denied without a certificate of appealability.

/s/ L. Patrick Auld<br>**L. Patrick Auld**<br>**United States Magistrate Judge**

May 25, 2022

---

[9] Alternatively, "[e]ven if Petitioner's Rehaif challenge was procedurally proper, such claim fails on the merits for largely the same reasons discussed above, with the record revealing that [any plea-hearing] error was harmless." Cameron v. United States, Nos. 2:18CR8, 2:19CV691, 2021 WL 4034082, at *5 n.4 (E.D. Va. Sept. 3, 2021) (unpublished); accord Perrin v. United States, Nos. 1:11CR318, 1:21CV26, 2021 WL 6206349, at *5 (M.D.N.C. Oct. 29, 2021) (unpublished) (Webster, M.J.), recommendation adopted, 2022 WL 19644 (M.D.N.C. Jan. 3, 2022) (unpublished) (Schroeder, C.J.); Rose v. United States, Nos. 5:18CR33, 5:20CV64, 2021 WL 2042092, at *5 (W.D.N.C. May 21, 2021) (unpublished).